IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JERI CULBERTSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 6:23-cv-03285-DGK |
| ) | |
| MARTIN J. O'MALLEY, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This case arises from the Commissioner of Social Security's ("the Commissioner") denial of Plaintiff Jeri Culbertson's application for disability insurance benefits ("DIBs") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had several severe impairments, including prinzmetal angina, history of coronary artery disease, hypertension, lumbar spine disorder, cervical spine disorder, and history of right leg femur, tibia, and knee replacement. Nevertheless, the ALJ found she retained the residual functional capacity ("RFC") to perform a range of sedentary work with certain physical restrictions. The ALJ ultimately found Plaintiff could perform past relevant work as a 911 dispatcher and an office manager.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff applied for DIBs on September 10, 2021, alleging a disability onset date of July 30, 2021. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing on September 12, 2022, and issued a decision finding Plaintiff was not disabled on September 21, 2022. The Appeals Council denied Plaintiff's request for review on July 11, 2023, leaving the ALJ's decision as the Commissioner's final decision. Judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

The Court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). Substantial evidence is less than a preponderance but is enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the Court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The Court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The Court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues the ALJ erred at Steps Two and Four by (1) failing to properly consider her structured environment or her diagnosis of major depressive disorder when determining the severity of her mental impairments, and (2) not including any mental limitations in the RFC. Both arguments are unpersuasive.

### I. The ALJ did not err at Step Two.

At Step Two, the ALJ found Plaintiff had non-severe mental impairments of "depressive disorder, and anxiety disorder/panic disorder/agoraphobia" which resulted in only mild limitations under each of the four "paragraph B" functional categories. R. at 18–19. Plaintiff argues the ALJ did not properly consider her structured environment or her diagnosis for major depressive disorder when determining the severity of her mental impairments.

Plaintiff's arguments are unpersuasive. As to the first, Plaintiff contends the ALJ was required to consider whether her structured environment concealed the effects of her mental impairments with respect to her ability to perform in an employment setting. Under certain

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) [her] impairments, alone or combined, are medically severe; (3) [her] severe impairments meet or medically equal a listed impairment; (4) [her] residual functional capacity precludes [her] past relevant work; and (5) [her] residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that she is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

circumstances, the Social Security regulations require an ALJ to consider the extent a claimant's structured environment "may mask the effects of a chronic mental impairment regarding [her] ability to work." *See Lillard v. Berryhill*, 376 F. Supp. 3d 963, 983 (E.D. Mo. 2019) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(C)(6)(b), (D), (F)(3)(e)). In contemplating a structured environment, the regulations consider situations where you "participate in a sheltered, supported, or transitional work program," "receive comprehensive '24/7 wrap-around' mental health services," "live in a hospital or other institution with 24–hour care," or whether "family members administer your medications, remind you to eat, shop for you and pay your bills, or change their work hours so you are never home alone." *See, e.g.*, § 12.00(D)(1)(a), (c), (d), (e).

Plaintiff states she created a structured environment to manage her mental impairments: namely, that she had a service dog. Plaintiff argues that while the ALJ's mild findings were consistent with her structured environment, they were not representative of her ability to perform in an employment setting.

Plaintiff's argument downplays the ALJ's thorough and careful consideration of this issue. In finding Plaintiff had only mild limitations in all four functional categories, the ALJ discussed Plaintiff's conservative and sporadic treatment, noting only several appointments with mental health professionals during the relevant period. *See* R. at 18–19, 745, 750, 756, 973. During this time, Plaintiff took low dose medications with positive results, and did not participate in any other mental health treatment. *See* R. at 745, 750, 756, 973. The ALJ noted Plaintiff consistently presented at doctor's appointments alert and fully oriented, denied depression except when experiencing severe back pain, controlled her anxiety, had no psychotic symptoms, and had normal memory and mood. *See* R. at 18–19, 745, 750–51, 756, 864, 973. Further, the ALJ noted that while Plaintiff was accompanied to appointments by her service dog and/or husband, she "was

4

cooperative and looked comfortable and relaxed while discussing chest pain that prompted a recent hospital admission. . . . and did not appear fearful or panicked." R. at 19, 967. In addition to medical evidence, the ALJ discussed Plaintiff's daily activities which include preparing simple meals, folding laundry, driving short distances, counting change, paying bills, shopping on the phone, and handling personal care without reminders. R. at 20, 292–93.

On this record, Plaintiff's reliance on her service dog and husband, conservative treatment history, and daily activities do not rise to the level of structure and support the regulations contemplate. While the steps Plaintiff has taken to treat her impairments is laudable, they do not require individualized consideration by the ALJ.

As to her second argument, Plaintiff contends the ALJ should have considered her diagnosis for major depressive disorder when determining the severity of her mental impairments. Essentially, Plaintiff argues that her diagnosis alone warrants a finding she had a severe mental impairment.

This argument is unavailing. The ALJ noted Plaintiff's diagnoses for "panic disorder with agoraphobia and *major depressive disorder*." R. at 18 (emphasis added). The ALJ then discussed Plaintiff's conservative and sporadic treatment which included consistently denying depression or exhibiting only mildly depressed mood. R. at 18–19. Plaintiff's actual treatment and symptoms are more indicative of the severity of her impairment than a mere diagnosis.

Accordingly, the ALJ's Step Two findings are supported by substantial evidence on the record as a whole.

II. **The ALJ did not err at Step Four.**

Lastly, Plaintiff contends the ALJ erred because he did not include any mental limitations in the RFC despite finding she was mildly limited in all four functional categories. At Step Four, the ALJ formulated the following RFC:

5

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: the claimant can lift and/or carry, push and/or pull 20 pounds occasionally, 10 pounds frequently. She can never lift overhead. The claimant can sit, with normal breaks, for a total of 6 hours per 8-hour workday, and stand and/or walk, with normal breaks, for a total of 2 hours per 8-hour workday. The claimant can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid hazards such as unprotected heights and moving mechanical parts.

R. at 22–23. At Step Two, the ALJ found Plaintiff had only mild limitations, in part, due to her daily activities and interactions. The ALJ noted her ability to: (1) spend time with and get along with others; (2) drive, prepare meals, fold laundry, pay bills, and shop on the phone; (3) complete self-care without reminders; and (4) provide healthcare providers with information about her health and work history, respond to questions, follow instructions, and comply with treatment. *See* R. at 19–20.

In discussing Plaintiff's mental impairments at Step Four, the ALJ stated the following:

> She reported problems engaging in social activities, remembering, completing tasks, concentrating, following instructions, handling stress, and adapting to change in routine. . . .
>
> Despite her impairments, the claimant engaged in a somewhat normal level of daily activity and interaction. Some of the mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment.

R. at 27 (citations omitted). While the ALJ could have explicitly mentioned the mild limitations identified at Step Two, "an arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome." *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (internal quotation marks omitted). Moreover, the ALJ's opinion as a whole is supported internally by explanation and the inclusion of findings from the record. For example, the ALJ: (1) discussed Plaintiff's daily activities and interactions finding

6

only mild limitations; (2) found the medical statements from Doctor Anderson Mehrle and Doctor James Hutchinson unpersuasive because they were inconsistent with Plaintiff's mental status examinations; and (3) found the recommendations for a service dog unpersuasive for the same reason. *See* R. at 19–21. These discussions demonstrate the ALJ thoroughly considered the severity of Plaintiff's mental impairments before formulating her RFC. Repeating these findings at Step Four would have been redundant.

Accordingly, the ALJ's Step Four findings are supported by substantial evidence on the record as a whole.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: October 4, 2024   /s/ Greg Kays
　　　　　　　　　　　　　　GREG KAYS, JUDGE
　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT